138 S.W.3d 467 (2004)
In the Interest of D.R.S.
No. 14-02-01134-CV.
Court of Appeals of Texas, Houston (14th Dist.).
May 20, 2004.
Rehear and Rehear Overruled July 8, 2004.
*468 Bruce T. Valigura, Conroe, for appellants.
Channa E. Borman, College Station, for appellees.
Panel consists of Justices EDELMAN, FROST, and SEYMORE.
Rehear and Rehear En Banc Overruled July 8, 2004.

MAJORITY OPINION
RICHARD H. EDELMAN, Justice.
In this child custody and possession case, Shelly Simmons appeals on various grounds a judgment appointing her aunt and uncle, Penny and Bobby Lee (the "Lees"), as well as her, joint managing conservators of Simmons's child, D.R.S. (the "child"),[2] and imposing a geographical restriction on Simmons's right to establish the primary residence of the child within the State of Texas. We affirm as modified.

Temporary Orders
Simmons's first point of error argues that the trial court violated her due process rights when it granted: (1) an ex parte temporary restraining order based on inadequate allegations in Penny Lee's affidavit; and (2) a temporary order appointing the Lees the temporary sole managing conservators during the pendency of the suit. Although recognizing that temporary orders generally are not appealable,[3] Simmons asserts that, under the "collateral consequences" doctrine, this issue is not moot because the temporary orders severely prejudiced her during trial. This alleged prejudice arose in that: (1) allusions by counsel during trial to the temporary orders being agreed misled the jury into thinking that Simmons was an uncaring mother; and (2) the temporary orders weakened her claim for sole managing conservatorship at trial by preventing her from having actual care, control, and possession of the child during that period.[4]
The collateral consequences exception to the mootness doctrine has been applied when prejudicial events have occurred "whose [sic] effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate." Gen. Land Office v. OXY U.S.A., Inc. 789 S.W.2d 569, 571 (Tex.1990). In this case, Simmons fails to cite any cases in which the doctrine has been applied in a child custody context. In addition, her reliance on the collateral consequences doctrine is premised upon: (1) the possibility that, but for the temporary orders, the evidence otherwise supported her being appointed sole managing conservator; and (2) the effects of the temporary *469 orders being long lasting. Regarding the first premise, as discussed below with regard to her second point of error, the evidence in the case did not remotely support her appointment as sole managing conservator (nor did the jury hesitate to so conclude, deliberating only four and a half hours to reach agreement on all nine questions in the verdict). As to the second premise, the conservatorship decision is subject to modification to the extent of changed circumstances with regard to Simmons's fitness to act as sole managing conservator.[5] Therefore, her first point of error fails to demonstrate effects that would continue to stigmatize a helpless or hated individual long after the temporary orders ceased to operate and thereby overcome the mootness of those orders. Accordingly, it is overruled.

Sufficiency of Evidence
Simmons's second point of error challenges the trial court's denial of her motion to disregard the jury's answers to questions one and three in the jury charge on the ground that the evidence was legally insufficient to show physical abuse, severe neglect, abandonment, alcohol or drug abuse, or very immoral behavior on her part.
A trial court may disregard a jury finding only if it is unsupported in the evidence,[6] the issue is immaterial, or the question has been rendered immaterial by other findings. Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex.1994). In the absence of an assignment of error to the charge, we review the sufficiency of the evidence in light of the charge submitted. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001).
In this case, the jury instructions stated, in part:
Parental Presumption
You are instructed that, unless you find that the appointment of a parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator, or a parent shall be appointed with another as joint managing conservators, of the child.[[7]]
Rebutting the Parental Presumption
You are further instructed that the presumption that a parent should be appointed as a managing conservator of the child is rebutted, if you find that:
(1) the parent has voluntarily relinquished actual care, custody, control, and possession of the child to a non-parent for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of the suit; and
(2) the appointment of the non-parent as managing conservator is in the best interest of the child.[[8]]
Following these instructions, questions 1 and 3 of the jury charge, respectively, asked: (1) "Would the appointment of [Simmons] as sole managing conservator significantly impair the child's physical *470 health or emotional development?"; and (2) "Do you find that [Simmons] voluntarily relinquished actual care, custody, control, and possession of the child to a non-parent for a period of one year or more, a portion of which was within ninety (90) days preceding August 11, 2000?" Although the jury answered questions 1 and 3 affirmatively, those affirmative answers would only have been necessary, and thus material, to a decision that Simmons not be appointed a managing conservator at all. Neither finding was necessary under the charge or applicable law to support the judgment's appointment of Simmons as merely a joint managing conservator, rather than the sole managing conservator. Therefore, any insufficiency of the evidence to support those findings is not a ground for reversal of the judgment. Accordingly, Simmons's second point of error is overruled.

Apportionment of Parental Rights
Simmons's third point of error argues that the judgment violated: (1) her constitutional right to make child-rearing decisions for her child by apportioning those parental rights between herself and the Lees; and (2) her statutory right to have a jury decide the primary residence of the child by restricting the geographic area in which she could establish that residence to a ten county area, rather than the entire State of Texas, as provided in the jury's response to question 7 in the charge. Correspondingly, the Lees' two cross points challenge the denial of their request to disregard the jury's answer to question 7 on the grounds that: (1) it was rendered immaterial by the jury's other findings; and (2) the evidence was legally and factually insufficient to support the jury's answer to that question.
As to Simmons's first contention, a trial court is expressly allowed by statute to limit the rights and duties of a parent appointed as a conservator if, as in this case, the court makes a written finding that the limitation is in the best interest of the child.[9] Because Simmons does not challenge the constitutionality of this provision, her third point of error fails to demonstrate any constitutional violation by the trial court's limitation of her parental rights in accordance with it and is overruled with regard to the first contention.
Regarding the residency issue, an order appointing joint managing conservators must, among other things, designate which conservator has the exclusive right to determine the primary residence of the child and either: (1) establish a geographic area in which the conservator may do so; or (2) specify that the conservator may determine the child's primary residence without geographic restriction. Tex. Fam.Code Ann. § 153.134(b)(1) (Vernon Supp.2004). However, a party is entitled to a jury verdict on the determination of the primary residence of the child,[10] and this right may not be contravened by a trial court.[11]
*471 In this case, the jury found in its answers to questions 7-9 of the charge that: (1) Simmons was the joint managing conservator with whom the child's primary residence should be; and (2) the place of that residence should be geographically restricted to the State of Texas. By contrast, the judgment gave Simmons the exclusive right to determine the primary residence of the child only within a ten county area of the State.[12]
Although the Lees seek to challenge the legal and factual sufficiency of the evidence to support these jury findings, they have cited, and we have found, no portion of the record at which they sought or obtained a ruling from the trial court on either sufficiency challenge.[13] Nor have they cited any authority that would excuse the requirement to do so.[14] Therefore, their sufficiency challenges present nothing for our review, and are overruled.
The Lees also contend that the jury's answer to question 7, that the child should primarily reside with Simmons, was rendered immaterial by the jury's answer to question 1, that the appointment of Simmons as sole managing conservator would significantly impair the child's physical or emotional development. The Lees argue that joint managing conservatorship combined with primary residence is so much like a sole managing conservatorship that a finding of significant impairment as to the latter should apply equally to the former. To whatever extent this may be true, it is neither consistent with the Family Code sections upon which the jury charge was based[15] nor within our province to re-legislate. Therefore, the Lees' cross-points are overruled. Because we *472 thus have no basis to affirm the portion of the judgment imposing the more narrow residence restriction in the judgment than was provided in the jury's answer to question 9, we sustain Simmons's third point of error to that extent.

Possession Order
Simmons's fourth point of error asserts the trial court erred in entering a possession order that substantially varied from the standard possession order[16] and granted the Lees more time of possession than they sought. The order essentially provides for the child to alternate between Simmons and the Lees every three weeks.
There is a rebuttable presumption that a standard possession order: (1) provides reasonable minimum possession of a child for a parent named as a joint managing conservator; and (2) is in the best interest of the child. Tex. Fam.Code Ann. § 153.252 (Vernon 2002). In ordering terms of possession other than a standard possession order, a court is to be guided by the guidelines established by the standard possession order and may consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and possessory conservator; and (3) any other relevant factor. Id. § 153.256.
In this case, the trial court's decision that the best interest of the child was to have a non-standard possession order was supported by its findings of fact and conclusions of law that: (1) Simmons had been irresponsible in numerous respects concerning herself and her children; (2) the Lees had shown the ability to act in the best interest of the child; (3) the joint managing conservators live 78 miles apart; and (4) a more stable environment for the child would be to spend three week periods with the respective joint managing conservators, rather than undergo the frequency of movement and disruption of daily schedule that would occur under a standard possession order.
Simmons challenges the non-standard possession order on the grounds that: (1) it infringes on her constitutionally protected rights to determine with whom her son will associate; (2) no evidence justified the deviation from the standard possession order; and (3) the arrangement provided would be disruptive and difficult for the child. Regarding the first contention, as noted above, a trial court is expressly allowed by statute to enter a non-standard possession order if it is in the best interest of the child. Because Simmons does not challenge the constitutionality of this provision, her fourth point of error fails to demonstrate any constitutional violation by the trial court's order entered in accordance with that statute. As to the second contention, Simmons does not specify how the evidence fails to support any of the trial court's findings of fact or conclusions of law, and thus presents nothing for our review. On the third contention, the possession arrangement provided in the order is unquestionably disruptive and difficult for the child (as well as the joint managing conservators). However, Simmons cites no evidence suggesting any less disruptive arrangement that was proposed to the court and would also satisfy the competing objective to give the child adequate time with the respective joint managing conservators.[17] Accordingly, Simmons's fourth *473 point of error is overruled. The portion of the judgment imposing a ten-county geographical restriction on Simmons's right to establish the residency of the child is reversed, judgment is rendered that this restriction will instead be the State of Texas, and the remainder of the judgment is affirmed.
FROST, J., concurring.
KEM THOMPSON FROST, Justice, concurring.
I write separately to address the court's disposition of Simmons's first point of error in which she complains that the trial court's alleged error in issuing a temporary restraining order and a temporary order appointing the Lees temporary sole managing conservators during the pendency of the suit allegedly prejudiced her attempt to be appointed sole managing conservator. As the majority correctly points out, temporary orders are not subject to interlocutory appeal. See Tex. Fam.Code § 105.001(e) (stating no interlocutory appeals may be taken from temporary orders); Lesikar v. Rappeport, 899 S.W.2d 654, 655 (Tex.1995) (stating no interlocutory appeals may be taken from temporary restraining orders). Furthermore, because these temporary orders are no longer in effect, ordinarily this court would be incapable of granting relief, and Simmons's first point would be moot. See Speed v. Keys, 130 Tex. 276, 109 S.W.2d 967, 967 (1937) (temporary restraining order which expired by its own terms rendered appeal therefrom moot); Hermann Hosp. v. Tran, 730 S.W.2d 56, 57 (Tex.App.-Houston [14th Dist.] 1987, no writ) (all issues on appeal regarding temporary restraining order were rendered moot by expiration of the order). The issue then arises as to whether the collateral-consequences exception to the mootness doctrine applies.
Texas courts have recognized the collateral-consequences exception and have applied it when "prejudicial events have occurred `whose effects will continue to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate.'" General Land Office v. OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex.1990) (quoting Spring Branch I.S.D. v. Reynolds, 764 S.W.2d 16, 18 (Tex.App.-Houston [1st Dist.] 1988, no writ)). Recognizing the limited nature of this exception to the mootness doctrine, Texas courts have invoked it in very limited circumstances. See, e.g., State v. Lodge, 608 S.W.2d 910, 912 (Tex.1980) (concluding collateral-consequences exception applies to involuntary commitment to a mental hospital); Carrillo v. State, 480 S.W.2d 612, 617 (Tex.1972) (applying collateral-consequences exception to adjudication as a juvenile delinquent because this type of adjudication was found to have "deleterious collateral effects and legal consequences"); In re Cummings, 13 S.W.3d 472, 475 (Tex.App.-Corpus Christi 2000, no pet.) (applying collateral-consequences exception to protective order because being the subject of such an order carries a stigma and legal repercussions).
Although the majority correctly notes that Simmons has not cited any cases applying the collateral-consequences exception in a child-custody context, the Thirteenth Court of Appeals recently addressed the issue and declined to apply the exception in this context. See Ngo v. Ngo, 133 S.W.3d 688, 691-92, 2003 WL 21982208, at *2 (Tex.App.-Corpus Christi Aug.21, 2003, no pet.). The Ngo court reasoned that a custody order is not like one for involuntary commitment or juvenile delinquency, which may stigmatize if not addressed by appeal, and that because the case presented neither helpless nor hated individuals facing some stigma, *474 such as one wrongfully convicted of a crime, the collateral-consequences exception was not applicable. See Ngo, 133 S.W.3d at 692, 2003 WL 21982208, at *2. The same logic applies here.
Though the court reaches the right result in this case, the majority incorrectly includes in its mootness analysis a discussion of whether the record shows that the alleged error in granting these temporary orders harmed Simmons's ability to obtain an order appointing her as sole managing conservator. That issue has no place in the analysis because in determining whether an issue is moot, a court should not rule on the merits. See Ngo, 133 S.W.3d at 692, 2003 WL 21982208, at *3. Nonetheless, it is correct that, even if Simmons's first point were not moot, she would not prevail because the record does not show that the alleged error in granting the temporary orders probably caused the rendition of an improper judgment. See Tex.R.App. P. 44.1(a).
For these reasons, I respectfully concur in the judgment as to Simmons's first point. I join the majority opinion as to its analysis of the remaining points.
NOTES
[2] At the time the judgment was entered in this case, the child was four years old.
[3] See Tex. Fam.Code Ann. § 105.001(e) (Vernon Supp.2004) (temporary orders in suits affecting parent-child relationship are not subject to interlocutory appeal); In re Tex. Natural Res. Conservation Comm'n, 85 S.W.3d 201, 205 (Tex.2002) (noting that temporary restraining orders are generally not appealable); In re P.R., 994 S.W.2d 411, 417 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j) (recognizing that temporary conservatorship order becomes moot and unappealable upon signing of final judgment appointing permanent conservator).
[4] However, even though the effect of the temporary orders was to require D.R.S. to spend time with both parties, this would not be evidence of a voluntary relinquishment. See In re M.W., 959 S.W.2d 661, 668 (Tex.App.-Tyler 1997, writ denied) (finding a parent's relinquishment ceases to be voluntary once temporary orders are issued).
[5] See Tex. Fam.Code Ann. § 156.001, .101 (Vernon 2002 & Supp.2004).
[6] Tex.R. Civ. P. 301.
[7] See Tex. Fam.Code Ann. § 153.131(a) (Vernon 2002); id. § 153.372(b) (the procedural and substantive standards regarding a court-ordered joint managing conservatorship apply to a nonparent joint managing conservator).
[8] See Tex. Fam.Code Ann. § 153.373 (Vernon 2002).
[9] See Tex. Fam.Code Ann. § 153.072 (Vernon 2002). In this case, the court made a written finding on page 2 of the judgment that "the following orders [which include the apportionment of parental rights among the joint managing conservators] are in the best interest of the child."
[10] Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, 1997 Tex. Gen. Laws 1033-34 (current version at Tex. Fam.Code Ann. § 105.002(c)(1)(D-F) (Vernon Supp.2004)).
[11] Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, 1997 Tex. Gen. Laws 1033, 1034, repealed by Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 22, 2003 Tex. Gen. Laws 2987, 2994. Lenz v. Lenz, 79 S.W.3d 10, 19-20 (Tex.2002).
[12] At the time this case was tried in 2002, an order designating a joint managing conservator having the exclusive right to determine the primary residence of the child could allow the conservator to do so only either: (1) without any geographic restriction; or (2) within an area consisting of the county in which the child was to reside and any county contiguous thereto. See Act of May 17, 1999, 76th Leg., R.S., ch. 936, § 2, 1999 Tex. Gen. Laws 3674, 3674 (current version at Tex. Fam.Code Ann. § 153.134(b)(1) (Vernon Supp.2004)). Because the Lees have not challenged the geographic restriction portion of the jury charge as being contrary to this provision or otherwise, we review the sufficiency of the evidence by reference to the charge submitted.
[13] See Tex.R.App. P. 33.1(a) (requiring complaints to be presented in the trial court in order to be preserved for appeal); Tex.R. Civ. P. 324 (requiring a complaint as to the factual sufficiency of the evidence to support a jury finding to be raised in a motion for new trial as a prerequisite to presenting it on appeal); T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex.1992) (reiterating that a no evidence point of error may be preserved in the trial court by: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial). In this case, the Lees' motion to disregard the jury answer was based solely on the materiality of the answer (not the sufficiency of the evidence) and even acknowledged that a record had not been made of their objections to the charge and stated (without citation of authority) that the trial court in a family law case cannot enter a judgment notwithstanding the verdict.
[14] When a judgment is entered notwithstanding one or more jury findings, an appellee may bring forward by cross-point in his appellate brief any ground which would have vitiated the verdict or prevented an affirmance of the judgment had it been rendered in accordance with the verdict, including a challenge to the sufficiency of the evidence to support the findings. Tex.R. Civ. P. 324(c). However, in this case, judgment was not entered notwithstanding the answer to question 7, and the Lees' cross-points do not challenge the sufficiency of the evidence to support the jury's answer to question 9.
[15] See supra, notes 5 and 6.
[16] See Tex. Fam.Code Ann. § 153.311-.317 (Vernon 2002 & Supp.2004).
[17] Moreover, to the extent that Simmons is sincere in wishing to reduce disruption for the child, she need only demonstrate to the court that she is capable of assuming greater responsibility for the child's care.