**HO & HUANG PROPERTIES, L.P. and SW Parkway Management, Inc., Appellants**

v.

**PARKWAY DENTAL ASSOCIATES, P.A., Poorang Pahlavan, H. Tram Nguyen, and Shannon Presley, Appellees**

NO. 14-14-00528-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 24, 2017

---

James A. Dunn, Houston, TX, for Appellees.

James C. Marrow III, Stephen Ray Smith, Stephen H. Cagle Jr., Kathleen Marie Bell, Richard P. Hogan, Jr., Jennifer Bruch Hogan, Houston, TX, for Appellants.

Panel consists of Chief Justice Frost and Justices McCally and Brown.[1]

## OPINION

Kem Thompson Frost, Chief Justice

This appeal—the second in this case—arises out of a landlord-tenant dispute under a commercial lease. The tenant sued the landlord and its management company, asserting breach of the lease. On remand following the first appeal, the trial court rendered judgment on the jury's verdict, awarding the tenant actual damages and attorney's fees. In this appeal, the landlord challenges the sufficiency of the evidence to support several jury findings and asserts that one jury finding mandated rendition of judgment in the landlord's favor. The landlord also asserts that the tenant failed to provide written notice of the landlord's alleged breach, the trial court reversibly erred in rejecting two jury-charge complaints, and the trial court erred in calculating prejudgment interest. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Parkway Dental Associates, P.A. as tenant, and appellant/defendant SW Parkway Management, Inc., as agent for appellant/defendant Ho & Huang Properties, L.P., as landlord, executed a commercial lease (the "Parkway Lease") in January 2004, for property located in a shopping center. Appellees/third-party defendants Poorang Pahlavan, H. Tram Nguyen, and Shannon Presley (collectively the "Guarantors"), officers of Parkway Dental, guarantied Parkway Dental's obligations under the Parkway Lease.

### Competitive-Business Restriction under the Lease

Parkway Dental used the leased premises for the practice of general dentistry. The Parkway Lease included an "Adden-

---

1. Justice McCally was assigned to the panel for this case and participated during oral argument, but she is no longer a justice on the Fourteenth Court of Appeals, and she did not participate in deciding this case. The remaining panel members have decided this appeal. See Tex. R. App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

dum Regarding Restrictions on Use of Project by Other Tenants," which provided that, "[u]less a Default of this Lease has occurred and remains uncured upon the expiration of any grace or notice periods, Landlord covenants and agrees that Landlord shall not permit any portion of the Project to be used for a Competitive Business." Under this provision (the "Covenant"), the parties defined "Competitive Business" as "Businesses practic[ing] . . . [g]eneral dentistry." As used in this provision, "Project" included the complex in which the leased premises were located, any of the common areas, as well as the shopping-center parking areas.

### The Lease-Extension Option

The term of the Parkway Lease began on April 1, 2004, and ended on March 31, 2009 (the "Lease Term."). Provided that Parkway Dental was not in default, the Parkway Lease gave Parkway Dental the option to extend the term of the Parkway Lease for an additional five years (the "Extension Option").

### Aquarium Dental's Lease of Property in the Shopping Center

Parkway Dental occupied the leased premises and paid rent under the Parkway Lease to the landlord throughout the Lease Term. Midway through the Lease Term, in June 2006, Ho & Huang Properties, L.P. sold a portion of the shopping-center parking lot to a third party without requiring that the purchaser agree to a restriction that was the same as or similar to the Covenant. The purchaser later sold the portion of the parking lot to another party who had a building constructed and entered into a lease agreement with Dr. Tuan Thanh Pham d/b/a Aquarium Dental ("Aquarium Dental"). The following year, Aquarium Dental posted a sign on the newly constructed space stating that Aquarium Dental would be opening soon.

### Parkway Dental's Suit for Injunctive and Monetary Relief

Parkway Dental filed suit in November 2007, seeking injunctive and monetary relief against Ho & Huang Properties, L.P. and Aquarium Dental as well as SW Parkway Management, Inc. (the "Management Company"). The trial court granted no injunctive relief in Parkway Dental's favor. Parkway Dental later nonsuited its claims against Aquarium Dental but continued to pursue its claims against Ho & Huang Properties, L.P. and the Management Company (collectively, the "Landlord Parties").

### Expiration of the Parkway Lease

Parkway Dental decided not to exercise the Extension Option, and on March 31, 2009, the Parkway Lease terminated by its own terms. Parkway Dental then closed the dental practice that it had been operating on the leased premises.

### The Trial Court's Judgment

Pursuing the lawsuit, Parkway Dental asserted various claims against the Landlord Parties, including breach of the Parkway Lease and anticipatory repudiation. The trial court granted summary judgment in favor of the Landlord Parties as to all of Parkway Dental's claims. Based upon the dismissal of Parkway Dental's claims, the trial court concluded that the Landlord Parties were "prevailing parties" under a Parkway Lease provision allowing a prevailing party to recover its reasonable attorney's fees and litigation costs. The parties tried to a jury the issue of reasonable fees for the services of the Landlord Parties' attorneys as well the amount of the Landlord Parties' out-of-pocket litigation costs. The trial court rendered a final judgment in favor of the Landlord Parties

and against Parkway Dental for the amounts the jury found.

### The First Appeal

On Parkway Dental's appeal, this court reached the following conclusions:

(1) The summary-judgment evidence raised a genuine issue of fact as to whether there was a competing business engaged in the practice of general dentistry on the Project before the Parkway Lease expired.

(2) A genuine fact issue existed as to whether the Landlord Parties breached the Parkway Lease because, under the unambiguous language of the Parkway Lease, the conveyance of part of the Project does not absolve the Landlord Parties of liability if the Covenant is breached based on the use of that part of the Project for a business involving the practice of general dentistry during the term of the Parkway Lease.

(3) A genuine fact issue existed as to Parkway Dental's damages under a reliance measure of damages, whose purpose is to put the injured party in as good an economic position as it would have occupied had the contract not been made.

(4) The summary-judgment evidence raised a genuine fact issue as to whether Parkway Dental suffered any harm or damages resulting from a material breach by the Landlord Parties of any of the landlord's obligations under the Parkway Lease.

See Parkway Dental Assocs., P.A. v. Ho & Huang Properties, L.P., 391 S.W.3d 596, 602–10 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We reversed the trial court's summary judgment as to Parkway Dental's claims for breach of the Parkway Lease and anticipatory repudiation and remanded these claims and the parties' requests for attorney's fees to the trial court for further proceedings. See id. at 612. We affirmed the trial court's summary judgment as to all of Parkway Dental's other claims. See id.

### Trial on Remand Following the First Appeal

Following remand, the parties tried the remaining claims, and the jury answered the questions submitted to it as follows:

(1) The Landlord Parties failed to comply with the Covenant;

(2) The failure to comply was not excused;

(3) There was an event of Default by Parkway Dental under the Parkway Lease "before March 31, 2009 that had occurred and remained uncured."

(4) The event of Default was excused.

(5) The sum of $11,500, if paid now in cash, would fairly and reasonably compensate Parkway Dental for its damages that resulted from the Landlord Parties' failure to comply.

The jury also found amounts for the reasonable fees for the necessary services of Parkway Dental's attorneys and the Landlord Parties' attorneys. The Landlord Parties moved the trial court to disregard various jury findings, arguing, among other things, the legal insufficiency of the evidence to support these findings. The trial court rendered judgment on the jury's verdict, implicitly rejecting the Landlord Parties' legal-sufficiency challenges. In its judgment, the trial court ordered that Parkway Dental recover from the Landlord Parties Parkway Dental's contract damages, trial and appellate attorney's fees, prejudgment and postjudgment interest, and court costs. The trial court rendered judgment that the Landlord Parties take nothing on the Landlord Parties' claims against Parkway Dental and the Guarantors. The Landlord Parties now challenge the judgment rendered on the jury's verdict in the second trial.

## II. Issues Presented

In this appeal, the Landlord Parties present seven issues, asserting the following:

(1) The jury's event-of-default finding in its answer to Question 3 entitled the Landlord Parties to judgment in their favor, and no evidence supports the jury's answer to Question 4 (asking whether Parkway Dental's default was excused);

(2) The trial court erred in failing to disregard the jury's damage finding in response to Question 5 as unsupported by legally sufficient evidence;

(3) The trial court erred in failing to disregard the jury's finding in response to Question 1 (the failure-to-comply-with-Covenant question) as unsupported by legally sufficient evidence or in failing to grant a new trial because the evidence is factually insufficient to support this finding;

(4) As a matter of law, Parkway Dental failed to give the Landlord Parties notice and opportunity to cure under Section 27 of the Parkway Lease, which they alleged is a condition precedent to Parkway Dental's ability to prosecute the lawsuit;

(5) The trial court reversibly erred in rejecting two jury-charge complaints;

(6) The trial court erred in failing to disregard the jury's findings in response to Question 6 (Parkway Dental's reasonable and necessary fees) as unsupported by legally sufficient evidence; and

(7) The trial court erred in calculating prejudgment interest.

## III. Legal-Sufficiency and Factual-Sufficiency Standards of Review

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The trier of fact stands as the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. It takes far less evidence to affirm a judgment than to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

## IV. Analysis

### A. Did the trial court err by failing to instruct the jury on Section 32 of the Parkway Lease or by failing to add the word "competitive" to Question 1?

Under their fifth issue, the Landlord Parties assert that the trial court revers-

ibly erred on two separate occasions by refusing to charge the jury as the Landlord Parties requested. We address the fifth issue out of order because its resolution helps to resolve the arguments under other issues.

### 1. Refusal to Add Section 32 Instruction

█ In Question 4 the trial court asked the jury, "Was the event of Default by Parkway Dental Associates, P.A. excused?" The trial court instructed the jury as follows:

> An event of Default is excused if such compliance is waived by Ho & Huang Properties, L.P. and/or SW Parkway Management, Inc.
>
> "Waiver" is the intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

The trial court denied the Landlord Parties' request to submit an additional instruction regarding Section 32 of the Parkway Lease. That section, entitled "Waiver of Breach," states:

> The waiver by either party of any breach of any provision of the Lease shall not constitute a continuing waiver or a waiver of any subsequent breach of the same or a different provision of this Lease.

█ A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. Likewise, a trial court must submit in its charge to the jury all questions, instructions, and definitions that are raised by the pleadings and the evidence. See Tex. R. Civ. P. 278. The parties have the right to be judged by a jury properly instructed in the law. Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000).

█ We review a trial court's decision to submit or refuse a particular in-

struction under an abuse-of-discretion standard. In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000). In applying this standard, we recognize that the trial court holds considerable discretion to determine the necessary and proper jury instructions. Id. The only function of an explanatory instruction in the court's charge is to help the jury in answering the issues submitted. Atchison, Topeka and Santa Fe Ry. Co. v. O'Merry, 727 S.W.2d 596, 601 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The trial court must give definitions of legal and other technical terms, but it is not required to give other instructions if they do not aid the jury. Id. The trial court does not abuse its discretion in refusing to submit unnecessary instructions even if they represent correct statements of law. See Riggs v. Sentry Ins., 821 S.W.2d 701, 704–05 (Tex. App.—Houston [14th Dist.] 1991, writ denied); Walker v. Hitchcock Indep. School Dist., No. 01-11-00797-CV, 2013 WL 3771302, at *3 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (mem. op.). We will not reverse a judgment for charge error unless that error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. See Thota v. Young, 366 S.W.3d 678, 687, 693 (Tex. 2012).

█ The Landlord Parties' proposed instruction mirrors the language in Section 32 and so correctly states the law in this case. Still, the instruction was unnecessary. The jury had the entire Parkway Lease before it in the trial evidence and was able to review all of its provisions, including Section 32. Question 4 asked the jury whether any breach by Parkway Dental was excused. The trial court reasonably could have concluded that an additional instruction based on Section 32, though relevant, would overemphasize the issue of waiver. See Jacksonville Ice & Elec. Co. v.

*Moses,* 63 Tex.Civ.App. 496, 134 S.W. 379, 383 (Tex. Civ. App. 1911) (noting that giving requested charge would have placed too much emphasis on issue). Overemphasizing an issue by including an unnecessary instruction does not aid the jury. *See id.* We conclude the trial court did not abuse its discretion by refusing the Landlord Parties' request for an instruction on Section 32. *See Houghton v. Port Terminal R.R. Ass'n,* 999 S.W.2d 39, 45 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Riggs,* 821 S.W.2d at 704–05.

### 2. Refusal to Add the Word "Competitive" to Question 1

Under the fourth issue, the Landlord Parties also assert that the trial court erred in refusing their request to add a word to Question 1, which contained the following language:

Did [the Landlord Parties] fail to comply with the [Covenant] with [Parkway Dental]?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; and

(d) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

2. (emphasis added).

In answering this question on breach you are instructed that a failure to comply could occur if, but only if, any other portion of the Project other than [Parkway Dental's] space was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009.

The Landlord Parties made an oral request at the charge conference for the trial court to insert the word "competitive" before the word "business" towards the end of the final instruction in Question 1, so that the final sentence would read: "In answering this question on breach you are instructed that a failure to comply could occur if, but only if, any other portion of the Project other than [Parkway Dental's] space was used for a *competitive* business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009." [2] The trial court denied the request.

The Landlord Parties assert that they were entitled to have the word placed in the charge because the trial court must include the express lease terms in the jury charge. In the first appeal, we held that under the unambiguous language of the Parkway Lease, the term "Competitive Business" is defined as "Businesses practic[ing] ... [g]eneral dentistry." *Parkway Dental Associates, P.A. v. Ho & Huang Properties, L.P.,* 391 S.W.3d 596, 605 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In the first appeal, it was undisputed that there was no uncured default under the Parkway Lease. *See id.* at 605, n.4. In this context, we stated that "the Landlord breaches the Covenant if, during the term of that lease, any portion of the Project is used for a business involving the practice of general dentistry." *Id.* at 606. The trial court instructed the jury that "a failure to

comply could occur if, but only if, any other portion of the Project other than [Parkway Dental's] space was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009." The trial court did not abuse its discretion by refusing the Landlord Parties' request to insert the word "competitive" into this instruction. *See id.*

The Landlord Parties' arguments under the fifth issue lack merit, so we reject them and overrule the fifth issue.

### B. Did the jury's event-of-default finding in its answer to Question 3 entitle the Landlord Parties to judgment in their favor?

▆ The jury answered "yes" in response to Question 3's query "[w]as there an event of Default of the Lease by Parkway Dental Associates, P.A. at any time before March 31, 2009 that had occurred and remained uncured?" For this question, the trial court instructed the jury as follows:

> In answering this question you are instructed to consider the following defined events of Default and none other, as stated in paragraph 19 of the Lease:
>
> 1) Failure of the Parkway Dental Associates, P.A. to keep the Leased Premises open for business during Business Hours, if such failure occurred two or more times in a Lease Year.
>
> 2) Failure by Parkway Dental Associates, P.A. to comply with the Additional Use Restrictions of the Lease starting on page 10, B (xii), and such failure, if any, was not cured within twenty (20) days after written notice thereof, unless such default cannot reasonably be cured within said twenty (20) day period, in which event, Parkway Dental Associates shall have such additional time as is reasonably necessary within which to

cure such default, so long as Parkway Dental Associates commences the cure within said twenty (20) day period and diligently prosecutes cure thereof.

The Lease's Additional Use Restrictions state that Tenant shall not perform or permit any act or practice which may . . . cause any . . . loud noise or constitute or create a nuisance or menace to any other tenant, occupant or other person in the Project. . . ."

An event of Default must be material. The circumstances to consider in determining whether an event of Default is material include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; and

(d) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

The Landlord Parties did not challenge the sufficiency of the evidence supporting the jury's finding in response to Question 3, nor did the trial court conclude that the evidence is legally or factually insufficient to support this finding. By its affirmative response to this question, the jury found that a material event of Default occurred during the Lease Term and remained uncured based on (1) Parkway Dental's failure to keep the leased premises open for business during Business Hours two or more times in a Lease Year ("Business Hours Default"), (2) Parkway Dental's failure to timely cure its non-compliance with Section 10.B.(xii) of the Parkway Lease,

which prohibited Parkway Dental from performing or permitting any act or practice which may ... cause any ... loud noise or constitute or create a nuisance or menace to any other tenant, occupant or other person in the Project...." ("Loud Noise Default"), or (3) both a Business Hours Default and a Loud Noise Default.

The trial court charged the jury that, in the event the jury answered "yes" to Question 3, the jury was to answer Question 4. After answering Question 3 affirmatively, the jury turned to Question 4's query: "Was the event of Default by Parkway Dental Associates, P.A. excused?" The jury answered affirmatively. For Question 4, the trial court instructed the jury as follows:

> An event of Default is excused if such compliance is waived by Ho & Huang Properties, L.P. and/or SW Parkway Management, Inc.

> "Waiver" is the intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

> An event of Default by Parkway Dental Associates P.A. is excused by a previous failure by Ho & Huang Properties, L.P. and/or SW Parkway Management, Inc, to comply with a material obligation of the same agreement.

Under their first appellate issue the Landlord Parties assert that the Parkway Lease conditions both the Covenant and the Extension Option on Parkway Dental not being in Default and that, because the jury found an event of Default in responding to Question 3, the trial court should

have rendered judgment in favor of the Landlord Parties.

In the Covenant, the Landlord Parties agreed not to permit any portion of the Project to be used for a Competitive Business "[u]nless a Default of this Lease has occurred and remains uncured upon the expiration of any grace or notice periods." In Question 3, the trial court submitted the issue of whether such a Default had occurred and remained uncured, and then, in Question 4, the trial court submitted the issue of whether Parkway Dental's Default was excused.

Under their first appellate issue, the Landlord Parties, relying on their condition-precedent argument, assert that the jury's finding in response to Question 3 means that the Landlord Parties could not have breached the Covenant or the Extension Option, and so they were entitled to judgment that Parkway Dental take nothing based on this jury finding.

In making this argument the Landlord Parties overlook that Question 3 did not ask the jury to find when during the Lease Term any event of Default occurred.[3] The sequence is important. Though the jury found that Parkway Dental defaulted at some point during the five-year term of the Parkway Lease and that the default remained uncured, the jury did not determine when during the Lease Term any event of Default occurred. If Parkway Dental defaulted after the Landlord Parties failed to comply with the Covenant, as found in response to Question 1, then, under the unambiguous text of the Parkway Lease, Parkway Dental's later event

---

3. The Landlord Parties did not object to this aspect of Question 3 at the charge conference. The trial court rejected a proposed event-of-default question tendered by the Landlord Parties. Though this tender had the event-of-default inquiry as the first question in the charge and did not require that the default be material, the question otherwise resembled Question 3 in the jury charge and asked the jury, "[w]as there an event of Default of the Lease by Parkway Dental Associates at any time before March 31, 2009 that had occurred and remained uncured?"

of Default would not prevent Parkway Dental from prosecuting a damage claim against the Landlord Parties based on their breach of the Covenant. The cases the Landlord Parties cite to show otherwise do not involve instruments with similar language. *See Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509, 511 (1942); *Moosavideen v. Garrett*, 300 S.W.3d 791, 799–800 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Zurita v. Lombana*, No. 01-01-01040-CV, 2003 WL 21027140, at *3 (Tex. App.—Houston [1st Dist.] May 8, 2003, pet. denied) (mem. op.); *Tye v. Apperson*, 689 S.W.2d 320, 323 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.); *McBride v. Farmers' & Merchants' Gin Co.*, 152 S.W. 1135, 1137 (Tex. Civ. App.—Dallas 1913, no writ). These authorities are not on point.

■ The Landlord Parties' argument also contradicts Question 4, under which the event of Default found by the jury in response to Question 3 is excused if the jury finds waiver or a prior material failure to comply with the Parkway Lease by the Landlord Parties.[4] To the extent the Landlord Parties assert that they are entitled to judgment as a matter of law solely based on the event-of-default finding in response to Question 3, this legal proposition conflicts with the jury charge, and the Landlord Parties waived this complaint by failing to voice it during the charge conference. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Energy Maintenance Servs. Group I, LLC v. Sandt*, 401 S.W.3d 204, 221, n.15 (Tex. App.—Houston [14th

Dist.] 2012, pet. denied); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.). Though the Landlord Parties objected at the charge conference that the trial court should have made Question 3 the first question submitted in the charge, the Landlord Parties did not object to Question 4's placement. The only objection the Landlord Parties made to Question 4 was the lack of an instruction based on Section 32 of the Parkway Lease (stating that a party's waiver of one breach of the Parkway Lease is not a continuing waiver or a waiver of any future breach of the Parkway Lease).[5] We already have concluded that the trial court did not err in overruling this objection. Under the charge submitted to the jury, any event of Default the jury found in response to Question 3 is excused if the jury finds waiver or a prior material failure to comply with the Parkway Lease by the Landlord Parties.

■ The Landlord Parties also argue that the trial court erred in including Question 4 in the jury charge (1) because, as a matter of law, the Landlord Parties could not have waived the condition in the Covenant that Parkway Dental not be in Default under the Parkway Lease and (2) because Parkway Dental understood that the Landlord Parties could not do anything about the presence of Aquarium Dental (presumably because, by that point, the Landlord Parties no longer owned the part of the Project on which Aquarium

---

4. In their opening brief, the Landlord Parties do not raise or brief any argument (1) that the trial evidence proved as a matter of law that Parkway Dental's material event of default or material breach of the Parkway Lease occurred before any breach of the Parkway Lease by the Landlord Parties, or (2) that the trial evidence proved as a matter of law a material event of default or a material breach

of the Parkway Lease by Parkway Dental that bars as a matter of law any recovery by Parkway Dental for breach of the Covenant. *See Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

5. Parkway Dental did not object to Question 4 during the charge conference.

Dental leased space). The Landlord Parties waived these complaints by failing to voice them during the charge conference. *See Young v. Neatherlin*, 102 S.W.3d 415, 419 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding appellant waived complaint that trial court should not have submitted a question to the jury by failing to object at trial to the submission of the question).[6]

We conclude that the Landlord Parties have not shown that the trial court erred in failing to render judgment that Parkway Dental take nothing by its claims based solely on the jury's event-of-default finding in response to Question 3.

### C. Does any evidence support the jury's answer to Question 4 that Parkway Dental's default was excused?

In answering Question 4, the jury found that Parkway Dental's default was excused. In their first appellate issue the Landlord Parties assert that no evidence supports this answer.

Under Question 3, the jury could have based its event-of-default finding on a Business Hours Default, a Loud Noise Default, or both. On appeal, the Landlord Parties assert that Parkway Dental was in default based on both types of defaults. The Landlord Parties have not challenged the sufficiency of the evidence to support the jury's event-of-default finding and that issue is not before us. For the purposes of our analysis, we presume that the jury based its affirmative answer to Question 3 on both a Business Hours Default and a Loud Noise Default.

The Landlord Parties challenge the legal sufficiency of the evidence to support the

jury's finding in response to Question 4 that Parkway Dental's default was excused. At the charge conference, the Landlord Parties lodged the only objection to Question 4—that the trial court should include an instruction based on Section 32 of the Parkway Lease (stating that a party's waiver of one breach of the Parkway Lease is not a continuing waiver or a waiver of any future breach of the Parkway Lease). In Section IV.A. of this opinion, we conclude that the trial court did not err in overruling this objection. Because no party asserted at the charge conference a valid objection to any defect in Question 4, we measure the sufficiency of the evidence to support the jury's finding using the charge given, regardless of whether the charge correctly states Texas law. *See Osterberg*, 12 S.W.3d at 55 (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Houston Poly Bag I, Ltd. v. Kujanek*, 370 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (measuring sufficiency of the evidence based on the unobjected-to charge, regardless of whether the charge correctly states Texas law); *Kormanik v. Seghers*, 362 S.W.3d 679, 688 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (measuring sufficiency of the evidence based on the question submitted to the jury when no party asserted a valid objection at the charge conference to any defect in the question); *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86 (reviewing sufficiency of evidence based on unobject-

---

**6.** In their reply brief, the Landlord Parties assert for the first time on appeal that Parkway Dental cannot prevail because it neither requested nor obtained jury findings that Parkway Dental complied with the conditions precedent to its recovery. The Landlord Parties did not raise or brief this argument in their opening brief; therefore, they waived this argument. *See Zamarron*, 125 S.W.3d at 139.

ed-to jury instruction and rejecting various arguments based on different legal standards).

■ Under the charge given, the jury could have found that Parkway Dental's default was excused (1) based on a waiver of either a Business Hours Default or a Loud Noise Default, or (2) based on a prior failure of the Landlord Parties to comply with a material obligation of the Parkway Lease. In the charge, the trial court defined "waiver" as "the intentional surrender of a known right or intentional conduct inconsistent with claiming the right." In applying this definition of waiver, Texas courts have stated that waiver is largely a matter of intent, and for implied waiver to be found through a party's conduct, intent must be clearly demonstrated by the surrounding facts and circumstances. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

As the Landlord Parties note in their appellate brief, they sent Parkway Dental a half-dozen letters over the course of the five-year term of the lease pointing to problems with noise coming from Parkway Dental's leased premises. The last letter was dated January 18, 2008, more than a year before the end of the Lease Term.

To find a Loud Noise Default under Question 3, the jury had to determine that Parkway Dental materially failed to comply with Section 10.B.(xii) of the Parkway Lease and that Parkway Dental did not cure this failure to comply within twenty days after written notice thereof.[7] We presume for the purposes of our analysis that, by February 8, 2008, Parkway Dental materially failed to comply with Section 10.-B.(xii) and that Parkway Dental had not cured this noncompliance within twenty days after receiving written notice of it. Nonetheless, the Landlord Parties did not send any more letters to Parkway Dental on this issue, nor did they complain that Parkway Dental had failed to cure its material failure to comply with Section 10.-B.(xii). The Landlord Parties did not choose to pursue their optional remedies under the Parkway Lease to (1) terminate the Parkway Lease, (2) take possession of the leased premises, expel Parkway Dental, and relet the premises, or (3) enter the leased premises and do whatever Parkway Dental was obligated to do under Section 10.B.(xii) and seek reimbursement from Parkway Dental for the incurred expenses.[8] The trial evidence indicates that the Landlord Parties took no further action regarding the Loud Noise Default, and instead stood silent in the face of this uncured, material failure to comply with the Parkway Lease. The Landlord Parties accepted rent payments through the end of the Lease Term on March 31, 2009.

Considering the evidence in the light most favorable to the jury's finding in response to Question 4, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude the trial

---

**7.** As stated in the jury charge, if the default could not reasonably be cured within the twenty-day period, Parkway Dental had such additional time as was reasonably necessary within which to cure the default, as long as Parkway Dental commenced the cure within the twenty-day period and diligently prosecuted the cure.

**8.** Section 20 of the Parkway Lease outlines these optional remedies.

evidence would enable reasonable and fair-minded people to find that the Landlord Parties waived the Loud Noise Default by intentionally surrendering known rights or by intentional conduct inconsistent with claiming the rights. *See Trelltex, Inc.*, 494 S.W.3d at 792–94. Therefore, the evidence is legally sufficient to support the jury's excuse finding in response to Question 4, and we need not and do not address whether the evidence is legally sufficient to support a finding that there was a prior failure of the Landlord Parties to comply with a material obligation of the Parkway Lease. *See id.*

Having concluded that none of the arguments under the Landlord Parties' first issue show error in the judgment, we overrule that issue.

**D. Did the trial court err in failing to disregard the jury's finding in response to the damage question as unsupported by legally sufficient evidence?**

In their second issue the Landlord Parties assert that the trial court erred in rendering judgment based on the jury's finding of damages and that no trial evidence supports the jury's damage finding in answer to Question 5. In response to a query as to what sum of money, if paid now in cash, would fairly and reasonably compensate Parkway Dental for its damages that resulted from the Landlord Parties' failure to comply, the jury answered "$11,500.00," based on the following damage item: "[t]he reasonable costs incurred by [Parkway Dental] for the build out of the Leased Premises less the benefit, if any received by [Parkway Dental]." [9]

During the charge conference, the Landlord Parties objected to Question 5 on the grounds that (1) Parkway Dental can recover, at most, the value of used, five-year-old equipment as its damages in this case; (2) the charge affirmatively misleads the jury into thinking the jury can award damages that should not be awarded on undepreciated equipment; (3) in Question 5, the trial court does not restrict the jury's consideration to the "element of reliance on use of the leased premises"; (4) the trial court does not restrict the jury's consideration to the undisputed fact that the equipment was used for a certain period of time and that Parkway Dental obtained at least half of the cash value of its expenditures. The trial court also refused a damages instruction tendered by the Landlord Parties based on a different legal standard for measuring Parkway Dental's reliance damages.[10] On appeal, the Landlord Parties do not assert that the trial court erred in overruling these objections to the charge or in refusing to submit the Landlord Parties' tendered instruction. We conclude that no party asserted at the charge conference a valid objection to any defect in Question 5; therefore, we measure the sufficiency of the evidence to support the jury's finding using the charge given, regardless of whether the charge correctly states Texas law. *See Osterberg*, 12 S.W.3d at 55; *Houston Poly Bag I, Ltd.*, 370 S.W.3d at 88; *Kormanik*, 362 S.W.3d at 688.

We conclude the trial evidence would enable reasonable and fair-minded people to find that Parkway Dental incurred $230,000 in reasonable costs for the build out of the leased premises. The Landlord Parties' expert, Jim Robertson, testified that, in his opinion, Parkway Dental ob-

---

9. The jury answered "0" as to the other three damages items. Today's case presents no issue regarding these findings.

10. The trial court also refused a damages question tendered by Parkway Dental.

tained a benefit of at least $435,895 during the term of the Parkway Lease. If the jury had credited this testimony completely, then it would have found zero damages for the damage item in question. Robertson based his opinion on various alleged benefits reflected in his testimony and in exhibits admitted into evidence.[11] If the jury credited Robertson's testimony as to some of these benefits but not as to others, and if the jury found that Parkway Dental obtained a benefit of $218,500, this calculation would yield a damage amount of $11,500. The jury had discretion to award damages within the range of evidence presented at trial. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The jury's finding in response to Question 5 falls within the range of the evidence. *See id.*

Considering the evidence in the light most favorable to the jury's finding in response to Question 5, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude the trial evidence would enable reasonable and fair-minded people to find that (1) the reasonable costs incurred by Parkway Dental for the build out of the leased premises less the benefit, if any, received by Parkway Dental equaled $11,500 and (2) $11,500, if paid now in cash, would fairly and reasonably compensate Parkway Dental for its damages that resulted from the Landlord Parties' failure to comply. *See id.*

The Landlord Parties assert that no legally sufficient evidence supports a finding that the damages found by the jury resulted from the Landlord Parties' failure to

comply with the Covenant. This argument conflicts with our opinion in the first appeal. *See Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607–10 (stating that "[f]or the foregoing reasons, we conclude that the summary-judgment evidence raises a genuine issue of fact as to whether Parkway suffered any harm or damages resulting from a material breach by the Landlord of any of its obligations under the Parkway Lease"). We conclude that the trial evidence is legally sufficient to support the jury's finding in response to Question 5. *See Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607–10; *Price Pfister, Inc.*, 48 S.W.3d at 352. So, we overrule the second issue.

**E. Is the trial evidence legally and factually sufficient to support the jury's finding of a material failure to comply with the Covenant?**

██ In their third issue the Landlord Parties assert that the evidence is legally and factually insufficient to support the jury's finding that the Landlord Parties materially failed to comply with the Covenant. The jury answered "yes" in response to Question 1's query "did [the Landlord Parties] fail to comply with the [Covenant] with Parkway Dental?" For this question, the trial court instructed the jury as follows:

A failure to comply must be material. The circumstances to consider in determining whether an event of Default is material include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated

11. The trial evidence included Parkway Dental's financial statements for the years 2004 through 2009.

for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; and

(d) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

In answering this question on breach you are instructed that a failure to comply could occur if, but only if, any other portion of the Project other than Parkway Dental Associates P.A.'s space was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009.

During the charge conference, the Landlord Parties asserted various objections to Question 1 that did not address any alleged defect in the form of the question. The trial court overruled the Landlord Parties' objection that the word "competitive" is missing from the second instruction in Question 1 and that this word should be inserted in front of "business" in this instruction. This complaint was the only objection the Landlord Parties voiced at the charge conference to any alleged defect in Question 1. We already concluded in the analysis of the fifth issue that the trial court did not err in overruling this objection. We conclude that no party asserted at the charge conference a valid objection to any defect in Question 1; therefore, we measure the sufficiency of the evidence to support the jury's finding using the charge given, regardless of whether the charge correctly states Texas law. *See Osterberg*, 12 S.W.3d at 55; *Houston Poly Bag I, Ltd.*, 370 S.W.3d at 88; *Kormanik*, 362 S.W.3d at 688.

Dr. Pham's testimony is, at times, confusing and contradictory. Nonetheless, Dr. Pham testified that on March 14, 2009, he performed a "limited oral exam" on an Aquarium Dental patient (identified as "SU 1510") in Aquarium Dental's office. The Landlord Parties assert that these services did not amount to the practice of general dentistry because the services were part of an orthodontics consult. Dr. Pham gave conflicting testimony on this point. At times, he testified that the exam was an "ortho visit" and that "I know for sure it was an ortho." But, Dr. Pham also stated that he never put braces on that patient. When asked if the services he provided to patient SU 1510 were not general dentistry because it was "an ortho visit," Dr. Pham answered that a "limited oral exam is also considered a general." Dr. Pham also testified that before April 1, 2009, he performed "extractions," when he extracted teeth from a Medicaid patient at Aquarium Dental's offices. Dr. Pham did not charge the patient for the services.

Dr. Pham testified that he has advanced training in "lingual braces" and that he "does braces" and "advanced procedures." Yet, when asked if he did teeth cleaning, he answered "That's general. I can do whatever I want. I'm a general doctor doing advanced procedures." Dr. Pham also stated that he can perform many procedures in his office, that he has flexibility, and that he can do a "consultation."

The Landlord Parties assert that the trial evidence is legally and factually insufficient to show that Aquarium Dental was a "competitive business," as prohibited by the Parkway Lease. The Landlord Parties also assert that there is no evidence Parkway Dental actually was in competition with Aquarium Dental in any respect. Under the jury charge, a failure to comply could occur only if any portion of the Project other than Parkway Dental's space was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009. The trial court did not instruct the jury that the

business engaged in the practice of general dentistry had to be in competition with Parkway Dental or had to be a competitive business. Under the unambiguous language of the Parkway Lease, the parties agreed that any business practicing general dentistry was a "Competitive Business" for the purposes of the Covenant. *See Parkway Dental Associates, P.A.*, 391 S.W.3d at 605–06. The jury charge reflected this agreement by requiring proof that another part of the Project was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009, without requiring proof that any business practicing general dentistry was a competitive business or a business in competition with Parkway Dental. As discussed above in the analysis of the fifth issue, the trial court did not err by overruling the Landlord Parties' objection that the word "competitive" is missing from the second instruction in Question 1 and that this word should be inserted in front of "business" in this instruction. *See id.*

Considering the evidence in the light most favorable to the jury's finding in response to Question 1, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude the trial evidence would enable reasonable and fair-minded people to find that (1) a portion of the Project other than Parkway Dental's space was used for a business that engaged in the practice of general dentistry between April 1, 2004 and March 31, 2009; and (2) the Landlord Parties materially failed to comply with the Covenant with Parkway Dental under the instructions in Question 1. Examining the entire record, considering both the evidence in favor of, and contrary to, the jury's finding in response to Question 1, and considering and

weighing all the evidence, this finding is not contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07.

We conclude that the trial evidence is legally and factually sufficient to support the jury's finding in response to Question 1. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. So, we overrule the third issue.

**F.  Did Section 27 of the Parkway Lease require Parkway Dental to give the Landlord Parties notice and an opportunity to cure regarding the Landlord Parties' failure to comply with the Covenant?**

■ Under their fourth issue, the Landlord Parties assert that Section 27 of the Parkway Lease required Parkway Dental to give the Landlord Parties notice and an opportunity to cure before suing for breach of the Covenant and that Parkway Dental failed to comply with this alleged condition precedent to maintaining an action against the Landlord Parties. Section 27 of the Parkway Lease, entitled "Default by Landlord," reads in pertinent part:

> In the event Landlord breaches any covenant, warranty, term or obligation of this Lease, and Landlord fails to cure same or commence a good faith effort to cure same within thirty (30) days after written notice thereof by Tenant (unless such default cannot reasonably be cured within said thirty (30) day period, in which event, Landlord shall have such additional time as is reasonably necessary within which to cure such default, so long as Landlord commences the cure within said thirty (30) day period and diligently prosecutes the cure thereof), Tenant shall be entitled to cure the default and make any necessary repairs.

Any reasonable expenses incurred by Tenant shall be reimbursed by the Landlord after thirty (30) days['] notice of the repairs and expenses incurred.

In construing contracts, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. ʾHighlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* But, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and we construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We cannot rewrite the contract or add to its language under the guise of interpretation. *See American Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 162.

Under the unambiguous language of Section 27, if the Landlord Parties breach the Parkway Lease and if Parkway Dental wishes to have the Landlord Parties either cure the breach or reimburse Parkway Dental for its expenses incurred in curing the Landlord Parties' default, Parkway Dental may elect to give written notice of the breach to the Landlord Parties under Section 27. This provision of the Parkway Lease does not require Parkway Dental to give the Landlord Parties notice and an opportunity to cure before Parkway Dental may sue the Landlord Parties for a breach of the Parkway Lease. *See Dynegy Midstream Srvs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 169–170 (Tex. 2009) (concluding that contracts unambiguously did not impose an obligation on one party to the contract, contrary to the argument of the other contracting party). Therefore, the Landlord Parties' arguments are based on an incorrect interpretation of Section 27. *See id.* Accordingly, we overrule the fourth issue.

## G. Is the trial evidence legally sufficient to support the jury's findings regarding a reasonable fee for the necessary services of Parkway Dental's attorneys?

In their sixth issue, the Landlord Parties assert that the trial evidence is legally insufficient to support the jury's findings in response to Question 6 as to a reasonable fee for the necessary services of Parkway's attorneys. The jury found that a reasonable fee for the necessary services for representation in the trial court is $303,525, $40,000 for representation in the court of appeals, $20,000 for representation at the petition-for-review stage in the Supreme Court of Texas, $10,000 for representation in the merits-briefing stage in the Supreme Court of Texas, and $5,000 for representation through oral argument and the completion of proceedings in the Supreme Court of Texas. No party asserted at the charge conference any objection to Question 6; therefore, we measure the sufficiency of the evidence to support the jury's findings using the charge given. *See Osterberg*, 12 S.W.3d at 55; *Houston Poly Bag I, Ltd.*, 370 S.W.3d at 88; *Kormanik*, 362 S.W.3d at 688.

The Landlord Parties assert that, when compared to the contract damages of $11,500 found by the jury, the

amounts of reasonable fees found by the jury are excessive, making the evidence legally insufficient to support the jury's findings. But, to show that an attorney's-fees finding is excessive, a complaining party must establish that the evidence is factually insufficient to support the finding. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). An excessive attorney's-fees finding is not one supported by legally insufficient evidence. *See id.* Thus, contrary to the Landlord Parties' argument, if the attorney's-fees findings were excessive, that would not show that the evidence supporting them is legally insufficient. *See id.* The Landlord Parties have not briefed any factual-sufficiency challenge to the jury's attorney's-fees findings, nor have they briefed a purported excessiveness challenge to these findings separate from their legal-sufficiency challenge. Therefore, we do not analyze the factual-sufficiency of the evidence, nor do we analyze whether the attorney's fees were excessive. Instead, we conduct a legal-sufficiency analysis.

Parkway Dental's attorney's-fees expert provided testimony on the services needed to represent Parkway Dental in this litigation from the fall of 2007 through the trial in January 2014, at which the expert was testifying. The expert testified regarding the work performed by three attorneys who represented Parkway Dental over the course of this litigation, including their experience and the amount charged by each attorney for each billable hour. The expert testified regarding some issues that arose during discovery. The expert explained that Parkway Dental pursued one summary-judgment motion and defended against at least ten summary-judgment motions filed by the Landlord Parties. The expert discussed the services rendered by an appellate lawyer in the first appeal in this case.

According to the expert, this case was an unusual, challenging, labor-intensive case that involved many novel issues, including issues regarding the provisions of the Parkway Lease that merited significant legal research. In the expert's opinion, the amount of fees that had been charged from 2007 through trial were reasonable based on the billing rates of the three attorneys and the expert's familiarity with the services rendered. The expert testified that the services rendered were necessary to represent Parkway Dental in this case. The services were performed over a period that spanned more than six years. Parkway Dental's expert testified that a reasonable fee for the necessary services for representation in the trial court is $303,525. The expert also testified as to amounts that would be a reasonable and necessary fee for representing Parkway Dental at various stages on appeal. The amounts found by the jury in response to Question 6 were the same amounts to which Parkway Dental's attorney testified.

The Landlord Parties did not submit expert testimony as to the reasonable fee for the necessary services of Parkway Dental's attorneys. The Landlord Parties' expert testified that a reasonable fee for the necessary services of the Landlord Parties' attorneys in the trial court is $535,000 and that the amount of reasonable fees for necessary services on appeal are amounts greater than or equal to those to which Parkway Dental's expert testified.

The Landlord Parties cite *Smith v. Patrick W.Y. Tam Trust* in support of their argument that the evidence is legally insufficient. *See* 296 S.W.3d 545 (Tex. 2009). But, this cited case is not on point because it addresses whether the evidence proved reasonable and necessary attorney's fees as a matter of law, rather than whether the evidence was legally sufficient to sup-

port attorney's-fees findings. *See id.* at 547–48.

Considering the evidence in the light most favorable to the jury's finding in response to Question 6, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude the trial evidence would enable reasonable and fair-minded people to find the amounts of reasonable fees for necessary services the jury found in response to Question 6. *See Bencon Mgmt. & General Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 208-10 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (finding evidence legally sufficient to support attorney's fees findings even though the attorney's fees exceeded the contract damages recovered by a significant amount). We therefore overrule the sixth issue.

## H. Did the trial court err in calculating prejudgment interest?

█ Under their seventh issue the Landlord Parties assert that the trial court erred in awarding prejudgment interest starting on November 9, 2007, the date Parkway Dental filed this lawsuit, rather than on the date the Landlord Parties breached the Covenant. The Landlord Parties rely upon *Hansen v. Acad. Corp.*, 961 S.W.2d 329, 336 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). But, the *Hansen* case pre-dates and conflicts with the Supreme Court of Texas's decision in *Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998). Therefore, the cited part of *Hansen* is no longer good law. *See Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998); *Lee v. Lee*, 47 S.W.3d 767, 800 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

█ Under current binding precedent, courts have adopted Finance Code section 304.104 to calculate prejudgment interest in breach-of-contract cases. *See* Tex. Fin. Code Ann. § 304.104 (West, Westlaw through 2015 R.S.); *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 531; *May v. Ticor Title Ins.*, 422 S.W.3d 93, 103 (Tex. App.—Houston [14th Dist.] 2014, no pet.). This statute provides that, with exceptions not applicable to today's case, "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed." Tex. Fin. Code Ann. § 304.104. Though the statute uses the term "the date suit is filed," to calculate prejudgment interest on a claim the plaintiff did not plead in the original petition, courts use the date that the plaintiff first filed a pleading in which the plaintiff asserted the claim. *See Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 891–93 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Tex. Star Motors, Inc. v. Regal Fin. Co.*, 401 S.W.3d 190, 203–04 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In Parkway Dental's original petition, filed on November 9, 2007, Parkway Dental asserted a breach-of-contract claim and alleged that the Landlord Parties had breached the Parkway Lease. Under a liberal construction of the original petition, Parkway Dental alleged that the Landlord Parties had breached the Covenant. Because Parkway Dental first asserted its breach-of-contract claim in a pleading on November 9, 2007, prejudgment interest on this claim started accruing no later than on that date. The trial court did not err in calculating prejudgment interest. *See* Tex. Fin. Code Ann. § 304.104; *Wheelbarger*, 471 S.W.3d at 891–93; *Tex. Star Motors, Inc.*, 401 S.W.3d at 203–04.

We overrule the seventh issue.

## V. Conclusion

The Landlord Parties have not shown that the trial court erred in failing to render judgment that Parkway Dental take nothing by its claims based solely on the jury's event-of-default finding in response to Question 3. The trial evidence is legally sufficient to support the jury's excuse finding in response to Question 4, the jury's damage finding in response to Question 5, the jury's material-failure-to-comply finding in response to Question 1, and the jury's attorney's-fees findings in response to Question 6. The trial evidence is factually sufficient to support the jury's material-failure-to-comply finding in response to Question 1. Section 27 of the Parkway Lease does not require Parkway Dental to give the Landlord Parties notice and an opportunity to cure before Parkway Dental may sue the Landlord Parties for a breach of the Parkway Lease. The trial court did not abuse its discretion by refusing the Landlord Parties' request for an instruction on Section 32 of the Parkway Lease or by refusing the Landlord Parties' request to insert the word "competitive" into an instruction in Question 1. And, the trial court did not err in calculating prejudgment interest.

Having overruled all of the Landlord Parties' appellate issues, we affirm the trial court's judgment.

