**Affirmed and Memorandum Opinion filed August 26, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00644-CV

## IN THE INTEREST OF E.D.S., A CHILD

**On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2013-24757**

## MEMORANDUM OPINION

In this dispute over the custody of a child, Father contends that the trial court erred by admitting evidence and that the evidence is legally and factually insufficient to support the jury's verdict appointing Mother as the sole managing conservator of the child. We affirm.

### I. PROCEDURAL BACKGROUND

The child was born in 2012. Mother and Father signed an agreed child support review order that established the child-parent relationship between Father and the child, the parents' support obligations, and possession and access to the

child.  The order named each parent a joint managing conservator, and Mother was designated as the conservator with the exclusive right to designate the primary residence of the child, among other exclusive rights.

Ultimately, each parent filed a petition to modify the parent-child relationship to request their own appointment as sole managing conservator.  After a three-day trial, a jury answered "Yes" to Question No. 1, "Do you find that it is <u>not</u> in the best interest of the child to appoint both parents as joint managing conservators?"  The jury answered "[Mother]" to Question No. 2., "Which parent should be appointed the Sole Managing Conservator of [the child], understanding the other parent will be appointed the Possessory Conservator?"

The trial court signed an order consistent with the jury's verdict appointing Mother sole managing conservator and Father possessory conservator.  Father filed a motion for new trial, which was denied by operation of law, and he timely appealed.

## II.    SUFFICIENCY OF THE EVIDENCE

We address Father's second issue first because it challenges the sufficiency of the evidence to support the jury's verdict.  *See In re L.C.L.*, 599 S.W.3d 79, 84 & n.2 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc) (citing *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam)).  Father challenges the jury's answer to Question No. 2 naming Mother as the child's sole managing conservator.  He asks this court to render a judgment naming him the child's sole managing conservator.  He does not challenge the jury's answer to Question No. 1.

2

## A. Legal Principles and Standard of Review

When custody issues are tried to a jury rather than the court, we apply traditional standards of review for challenges to the sufficiency of the evidence. *See In re A.D.*, 474 S.W.3d 715, 722 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Generally, we review the sufficiency of the evidence in light of the charge submitted to the jury. *In re D.R.S.*, 138 S.W.3d 467, 469 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We consider the entire record, crediting evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Id.*

Evidence is factually sufficient if it is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We consider the entire record, considering evidence both in favor of and contrary to the challenged finding. *Id.*

Under both standards, the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Ho & Huang Props. v. Parkway Dental Assocs.*, 529 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We may not substitute our own judgment for that of the factfinder even if we would reach a different answer on the evidence. *Id.* It takes far less evidence to affirm a judgment than to reverse it. *Id.*

When reversing based on factual insufficiency, this court must detail all the relevant evidence; but if we determine the evidence supports the jury's verdict, we

need not detail all the evidence supporting the judgment. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

Modification proceedings are governed by a statutory scheme distinct from the one applicable to original custody determinations. *In re J.R.P.*, 526 S.W.3d at 777. In both types of proceedings, however, the best interest of the child is the primary consideration. *See id.*; *see also* Tex. Fam. Code §§ 153.002, 156.101(a). "A modification suit introduces additional policy concerns not present in an original custody action, such as stability for the child and the need to prevent constant litigation in child custody cases." *Id.* (citing *In re R.T.K.*, 324 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

Considering these policies and the nature of child custody disputes, appellate courts provide "unique deference" to a factfinder's custody determination. *In re R.T.K.*, 324 S.W.3d at 901. It is even more critical to defer to the factfinder's determinations of credibility and demeanor in child custody disputes because, as in this case, the factfinder often does not hear from the child who is the subject of the suit. *Id.* Thus, the child's behavior, experiences, fears, joys, and significant attachments are conveyed through the words of other witnesses. *Id.* "The individuals vying for conservatorship may be scrutinized by the fact finder for such intangible signs as an animated smile when describing a child's achievements, a furrowed brow when explaining typical affectionate concern, or even tears when anticipating the emotional impact the outcome of the litigation will have on a child." *Id.* (quoting *In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.). Great deference is afforded the factfinder in light of the "forces, powers, and influences that cannot be discerned by merely reading the record." *Id.* (quoting *In re De La Pena*, 999 S.W.2d at 526).

## B.    Evidence and Analysis

In his multifarious sufficiency challenge, Father argues that the evidence does not support the jury's verdict.[1]  He contends that the verdict is not supported by the evidence because Mother "committed family violence against [Father], his wife, and the child."  If we were reviewing a verdict in favor of Father, we might indulge this inference; but while reviewing a contrary finding, we may not.  Father refers to several videos that he and his wife recorded of Mother following the couple through the Houston tunnels.  Mother tried to break through the couple while they held hands; Father's wife analogized the incident to the childhood game "Red Rover."  Father recorded another video in 2014 while returning the child to Mother's possession.  When Father did not immediately leave, Mother swore at Father and stood in front of Father's car while holding the child in her arms.  Father honked his horn at Mother and ultimately drove around Mother to leave.

Father also refers to an agreed protective order issued against Mother.  Although the printed order included a finding of family violence, the finding was struck through, and the court made no similar finding of family violence.  The order required exchanges of possession of the child to be done at a police station, among other requirements.  Father does not argue or identify evidence that Mother violated the protective order

Father adduced other evidence to cast Mother in a negative light, such as her use of foul language directed at Father and his wife and making of harassing phone calls to them before the agreed protective order.  But the jury also heard Mother

---

[1] Father presents his legal and factual sufficiency points in the same issue, cites a single case from the Amarillo Court of Appeals regarding an abuse of discretion standard, and does not attempt to apply different standards of review when evaluating the evidence.  We will address his sufficiency challenges together.

acknowledge her poor decisions, apologize for her past conduct, and testify about her efforts to change and be an effective co-parent.

The jury heard from Mother, the child's teacher, and Mother's relative about how the child was thriving in Mother's care. The child was a good student and had a lot of friends who lived in Mother's neighborhood—nearly an hour from where Father lived and proposed relocating the child. The child participated in multiple extracurricular activities, and Mother was involved, such as coaching the T-Ball team. Mother has a lot of family support in the area, and the child would see family members often. Mother took the child on vacations despite evidence that Father would not cooperate and allow Mother to take the child on international travel.

Mother testified that her interactions with Father are now civil, she shares information with Father about the child's schooling and medical appointments, she hopes for Father to have a good relationship with the child, and she does not harbor ill will toward Father. She testified that she did not want the child to feel like he had to pick or choose between his parents. She also testified that Father had been uncooperative with co-parenting, such as by not responding to her request to coordinate the child's extracurricular activities, and not communicating about the child's counseling or school matters. She testified about an incident when the child developed an allergic reaction and had to go to an emergency room shortly after being in Father's care—Father did not immediately respond to phone calls and text messages in which Mother inquired about what the child had eaten. Mother testified that Father had kept the child overnight when he was not supposed to and did not notify Mother.

Mother testified that she wanted the child to continue living with her because it was the home that he had known, and he flourished in her care. She

6

testified that the rights and duties that she sought as sole managing conservator were the same rights and duties that she had been exercising since the child was born.

Considering all of the evidence, reasonable and fair-minded people could find that it was in the child's best interest to appoint Mother as the sole managing conservator. Father adduced evidence placing himself in a positive light and Mother in a negative light, but the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See In re R.T.K.*, 324 S.W.3d at 900–05 (sufficient evidence to support appointment of the step-mother as sole managing conservator because it promoted the child's need for stability, which would be disrupted by removing him from his home and placing him with the mother); *In re J.W.H.*, No. 14-09-00143-CV, 2010 WL 1541679, at *1–5, *7 (Tex. App.—Houston [14th Dist.] Apr. 20, 2010, no pet.) (mem. op.) (sufficient evidence to support appointment of the father as sole managing conservator when the parents presented conflicting evidence about each parent's interference with the other's possession of the children); *Knopp v. Knopp*, No. 14-02-00285-CV, 2003 WL 21025527, at *6–8 (Tex. App.—Houston [14th Dist.] May 8, 2003, no pet.) (mem. op.) (sufficient evidence to support appointment of the father as sole managing conservator when the mother moved with children out of state without informing the father, whom the mother claimed was verbally abusive).

Father's second issue is overruled.

### III. ADMISSION OF EVIDENCE

In his first issue, Father contends that the trial court erred by admitting into evidence a "Rule 11 agreement for temporary orders." Father suggests that the Rule 11 agreement is hearsay and a comment on the weight of the evidence, but

Father cites no authority to support this argument and does not provide any substantive analysis, so it is waived. *See, e.g.*, *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

Citing only to the rules of evidence, Father also contends that the agreement for temporary orders was irrelevant and inadmissible under Rule 403 because Mother attempted to show that Father had violated temporary orders.

In deciding whether to appoint parents as joint managing conservators, the jury instructions in this case informed the jury to consider, among other things, the ability of the parents to reach shared decisions in the child's best interest. A parent's failure to abide by an agreed temporary order is relevant to a parent's ability to reach shared decisions. Thus, a parent's failure to abide by agreed temporary orders is relevant to conservatorship. *See In re J.W.H.*, 2010 WL 1541679, at \*3 (considering evidence of parent's failure to abide by Rule 11 agreement); *Whitworth v. Whitworth*, 222 S.W.3d 616, 631–62 (Tex. App.— Houston [1st Dist.] 2007, no pet.) (considering evidence of parent's violation of temporary orders). Father does not show how the probative value of the Rule 11 agreement for temporary orders was substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Tex. R. Evid. 403.

Father's second issue is overruled.

## IV.  CONCLUSION

Having overruled both of Father's issues, we affirm the trial court's order appointing Mother as the child's sole managing conservator.

8

/s/    Ken Wise
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.